WILLIE WICKES *vs.* RICHARD D. HYNSON, ET AL.,
EXECUTORS OF R. HYNSON.

*Stale Claims—Sum Awarded by Unratified Auditor's Account—Presumption of Payment.*

Certain real estate was sold, under a decree in an equity suit, for division among the heirs of the deceased owner. Before distribution one of the sons of the decedent died leaving an infant daughter. Two auditor's accounts were stated in the cause in one of which a sum of money was awarded to this daughter as her share of her father's interest in the land, and in the other account the same sum was awarded to the administrator of her father. Neither account was ever ratified; the trustee who made the sale died and no further steps regarding these accounts were taken for twenty-three years, when this daughter, more than ten years after coming of age, filed a petition in the cause asking that the executor of the deceased trustee be required to pay the sum awarded to her in one of the auditor's accounts. The evidence showed that the petitioner's father had executed an equitable mortgage on his interest in the land to secure an indebtedness in part contingent, but the exact amount of the final indebtedness was not clearly shown, although some payments on account of it were proved to have been made by the trustee to the mortgagee. *Held,* that the petition has failed to establish a right to the sum mentioned in one of the auditor's accounts and that the evidence as a whole and the great lapse of time justify the presumption that her father's interest in the land had been applied to the satisfaction of his mortgage debt.

Appeal from the Circuit Court for Kent County (PEARCE, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, SCHMUCKER and JONES, JJ.

*Hope H. Barroll* and *James P. Gorter,* for the appellant.

*Harrison W. Vickers* (with whom was *Richard D. Hynson* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal brings up for our review the action of the Cir-

cuit Court of Kent County in rejecting the application made by the appellant in June, 1900, to be allowed in the right of her deceased father his share of the proceeds of certain real estate of her grandfather which was sold by the late Richard Hynson as trustee in March, 1873.

The appellees, who are the executors of Hynson, resisted the claim upon the ground that the share of the proceeds of sale which would have been primarily awardable to the appellant's father had long ago been applied to the payment of his creditors by the trustee.

The material facts appearing from the record may be stated as follows : James P. Wickes, the appellant's grandfather, died intestate in February, 1869, seized of a farm in Kent County and possessed of considerable personal property. He left surviving him a widow, Charlotte A., and eight children, one of whom was the appellant's father, William H. Wickes. In May, 1871, before the sale of the farm, which produced the fund in controversy, the son, William H., died intestate, leaving a widow, Matilda, and one child, the present appellant, who was then but a few months old.

After the death of both James P. Wickes and his son, William H., the present suit was instituted on the equity side of the Court for the sale of the farm for the purpose of partition. The bill was filed in October, 1872, and the decree for the sale of the farm followed in due course, naming Hynson as trustee to make the sale. The farm was sold by the trustee in March, 1873, to Charlotte A., the widow of James P. Wickes, for $9,125.

Two auditor's accounts distributing the proceeds of the sale were stated and one of them was filed in the case on April 14th, 1877, and the other on July 2nd, 1877. These accounts are exactly alike except in their treatment of the sum of $1,072.21 which was ascertained to be the share of William H. Wickes. Both accounts awarded one-seventh of that sum to Matilda Wickes, William's widow, in lieu of dower, but the account of April 14th awarded the remaining $919.03 of William's share to Richard Hynson as his administrator

while the account of July 2nd allowed the $919.03 to the appellant as William's heir at law.

Nothing appears to have been done toward procuring the ratification or rejection of either one of these accounts during the following twenty-three years, but they both remained unacted upon by the Court on June 5th, 1900, when the appellant filed the first of the petitions out of which the immediate controversy now before us arose. The appellant's first petition filed June 5th, 1900, called the Court's attention to the condition of the case and asked for the appointment of a new trustee in the place of Hynson, who had died in 1889, in order to enable her to secure the payment of such sum as might be due her from the proceeds of sale of the farm. Upon this petition an order was passed appointing a new trustee. Shortly thereafter the appellant filed her second petition alleging that the new trustee had repeatedly demanded of the present appellees that they, as the executors of the deceased trustee, Hynson, account for the trust funds in the hands of their testator at the time of his decease, but they had neglected to comply with the demand so made on them.

The appellees were brought into the case as executors of Hynson and answered the appellant's petition insisting by way of defense to her demand that Hynson as trustee had in his lifetime paid William H. Wickes' share of the proceeds of sale to his mother, Charlotte A. Wickes, in liquidation of his indebtedness to her and that such payment was made by Hynson in accordance with an agreement to that effect made by William H. with his mother before his death. The appellees also excepted upon the same grounds to the ratification of the auditor's account of July 2nd, 1877, which awarded the $919.03 to the appellant.

After the introduction by the respective parties of much testimony oral and documentary the issue upon the appellant's petition came to a hearing and the Circuit Court rejected both of the auditor's accounts filed in 1877, so far as they related to the $919.03 in controversy, and on October 14th, 1901, directed a new account to be stated awarding that sum, less the

costs of the proceedings under the appellant's petition, to the appellees as the executors of the decased trustee, Hynson. From that order the present appeal was taken.

The appellees produced in the Circuit Court appropriate releases to the deceased trustee Hynson for all of the items embraced in the two auditor's accounts filed in 1877, except the sum of $919.03 of Wm. H. Wickes' share. They insisted that that sum had been paid by the trustee to Charlotte A. Wickes as the equitable mortgagee of her son William's interest in the farm. In support of this contention they produced a sealed agreement made by Wm. H. Wickes in March, 1869, to give his mother a mortgage on such personalty as he might buy from his father's estate and also "*on his undivided interest in the real estate of his father, James P. Wickes*" to indemnify her against loss as his surety for the price of such personalty and for a year's rent ($1,200) of his father's real estate of which he had become tenant. The record shows that he purchased $2,500 worth of personalty from his father's estate thus making $3,700 for which he covenanted to give his mother a mortgage of indemnity upon his interest in his father's real estate.

This agreement constituted an equitable mortgage on his interest in the land for such sum as his mother was compelled to pay as his surety. *Western Nat. Bank* v. *Union Bank*, 91 Md. 620–1; *Nelson* v. *Hagerstown Bank*, 27 Md. 51; *Gill* v. *McAttee*, 2 Md. Chy. 255. The record unfortunately does not show in any clear or satisfactory way the amount of money which she paid under the agreement.

Two of William H. Wickes brothers, his sister and a brother-in-law testified that it was always understood in the family that William was largely indebted to his mother and that his interest in the paternal real estate was to go toward the payment of this debt but none of them were able to fix any definite amount of such indebtedness. Excerpts from the books of account of Richard Hynson, and from his accounts as administrator of the personal estate of William H. Wickes and as guardian of the minor children of James P. Wickes all

having some relation to the indebtedness intended to be covered by the equitable mortgage were introduced in evidence and appear in the record, but they when carefully examined, do not in our opinion, of themselves establish either the fact or the amount of the indebtedness or settle the question of its payment.

The counsel for the respective parties to this appeal have with considerable ingenuity framed the tabulated statements appearing in their briefs made up of items taken from the exhibits offered in evidence, the one statement supporting the contention of the appellant and the other that of the appellees, but the conclusions at which they thus arrive involve too large an element of conjecture to permit us to accept either of them as a demonstration. We therefore deem it unnecessary to pass in detail upon the exceptions appearing in the record to the admissibility in evidence of a number of these exhibits.

The conflicting auditor's accounts filed in 1877 were not presented to the Court for action upon them while the matters were fresh in the minds of the interested parties. The appellant took no step for the assertion of her rights for twenty-three years after the accounts were filed, although she came of full age ten years before she filed her first petition. Both parties to the equitable mortgage and the trustee who made disposition of the fund in controversy were then dead and we are now compelled as were the learned Judges of the Circuit Court to determine the issue presented by this record upon the well known principles which govern Courts in dealing with stale claims. When tested by these principles we regard the conclusion arrived at by the learned Judges of that Court as the proper one and we will not disturb it.

The sealed agreement between William H. Wickes and his mother Charlotte, already adverted to, created an equitable mortgage upon his interest in the farm sold by Hynson, as trustee, and also upon the personalty which he bought from his father's estate. No other ground of indebtedness from him to his mother is shown to have existed. Two of his brothers, his sister and the husband of another sister all testified that it

was always understood in the family that William was largely indebted to his mother and that his interest in the estate of his father was to be applied to her payment. It must be presumed at this late day in the absence of evidence of a contrary tenor that this indebtedness of William to his mother was upon the equitable mortgage.

This presumption is greatly strengthened by the contents of three documents found by Hynson's executors among his papers and produced in evidence in the case.   One of them is as follows:

"*In the settlement made this 13th day of November, eighteen hundred and seventy-seven, with Richard Hynson, trustee, for the sale of the real estate of my husband, the late James P. Wickes, I owe him the sum of seven hundred and sixty-four 76 100 dollars, against which I am to be allowed as a credit whatever dividends may be allowed on my claims against my son, the late W. H. Wickes, out of the sum which has been audited to his infant daughter out of the proceeds arising from the sale of the aforesaid real estate.   And it is understood if my aforesaid dividends shall be less than the above sum I am to pay to R. Hynson the difference.*

*Witness :*                                 C. A. Wickes."

*J. Evan Thomas.*

The names of C. A. Wickes and J. Evan Thomas to the above paper are cancelled by strokes of a pen, and across its face is written in the handwriting of Hynson the words "*Settled July 20th, 1883.*"

The second is a receipt bearing date July 20th, 1883.

"*Richard Hynson, trustee,*

*to Mrs. C. A. Wickes,        Dr.*

*To her proportion of the sum allowed W. H. Wickes in the distribution of his father's real estate which per audit is $919.10 (and 20 per cent.)*                           $701.42.

*Recd. payment of R. Hynson, trusteee.*

*July 20th, 1883.*                          C. A. Wickes."

The third paper is a letter to Hynson from A. Harris who was a brother of Charlotte A. Wickes and frequently transacted

business for her.   This letter which apparently enclosed the
receipt of July 20th, 1883, is as follows:

*"Napley, July 21st, 1883.*
*Richard Hynson, Esq., Chestertown, Md.*

*My Dear Sir: As requested by you yesterday, herewith send
the receipt signed by Mrs. C. A. Wickes for her proportion of the
sum allowed W. H. Wickes in the distribution of his father's
real estate.*

*I also return herewith the memorandum requested.*

*Congratulating you on the final and satisfactory settlement of
this protracted business.*

*I remain, very truly yours,*

*A. Harris."*

The genuineness of the signatures of Mrs. Wickes and Mr.
Harris to these documents was either proven or admitted in
the case.

There is a slight discrepancy between the amounts stated in
these documents and those in the auditor's accounts but when
taken together with the evidence previously referred to by us
they should we think, in the absence of proof to the contrary,
when considered at this late day be accepted as sufficiently ac-
counting for the $919.03 in controversy by showing that it
was paid by Hynson, trustee, to Mrs. Charlotte A. Wickes, in
liquidation of the equitable mortgage from her son William on
his interest in the farm.  If this conclusion be correct it affords
a defense to the appellant's demand as her claim as heir at law
upon her father's interest in the farm would be subject to the
operation of an equitable mortgage made upon it in his lifetime.

The claims of Mrs. Charlotte A. Wickes under her mort-
gage should of course have been long ago asserted by proper
proceedings in the case and have been either admitted or
proven, but in view of the death of the parties to the settle-
ment and the long time which has elapsed since the conclusion
of the transactions between her and the trustee we think this
is a proper case for the application of the doctrine that equity
will treat as having been done that which ought to have been
done.

It is further to be observed that although the appellant was an infant for many years after her father's death, her mother Matilda Wickes was living and the record contains the release of the mother to the trustee Hynson for the sum awarded her in lieu of dower in her husband William's interest in the farm. This allowance in lieu of dower to Matilda appears in the same auditor's account in which the $919.03 claimed by her daughter, the appellant, is awarded to the daughter. Matilda's release bears date a few months after the filing of the accounts and the presumption is very strong that if the $919.03 had been regarded as really due to the daughter the mother would have required its payment at the time when she received her own share or that she would in no event have entirely failed to have a claim made for it. The record further shows that, when in 1881 the appellant became entitled to receive $300 from the estate of an aunt, her stepfather, R. S. Emory, was appointed guardian for her in order to collect it, thus strongly indicating that her pecuniary interests were neither overlooked nor neglected.

The appellant's mother lived with her father next door to Hynson, the trustee, until 1881, when she married Mr. Emory, and thereafter lived in the same neighborhood within easy access of Hynson until her death in 1883. The fact that in all of this time no steps were taken to have the auditor's account which awarded the $919.03 to the appellant ratified or to enforce the payment of the money by the trustee renders practically conclusive the presumption that the persons having in charge the interests of the appellant during her infancy well knew that her father's interest in the farm had been applied to the satisfaction of the lien held by his mother and that there was in fact no money due to her from the trustee.

The order appealed from will be affirmed.

*Order affirmed with costs.*

(Decided June 17th, 1902.)