J. C. M. LUCAS *vs.* ARCHIBALD H. TAYLOR ET AL., RECEIVERS.

*Mechanics' Lien Against Vessel for Equipment—Time of Filing Claim. When Ownership of Unfinished Vessel is in Builder—Amendment of Lien Claim—When Lien May be Enforced.*

A lien claim for equipping a newly constructed vessel with an electric light plant was filed more than six months after the building of the vessel was begun, but within six months after the work of installing the lighting plant was begun. *Held,* that the claim was filed in due time under Code, Art. 63, sec. 44, which provides that such claim shall be filed within six months from the commencement of the building, repairing, equipping or refitting of the boat.

When a lien claim against a vessel states that the work was done and the materials furnished "at the request of the said Baltimore Shipbuilding, etc., Co., in said Baltimore City," that is a sufficient compliance with Code, Art. 63, sec. 44, which prescribes that a lien claim against a boat shall state the place where it was built, repaired or equipped.

When the contract for building a ship by a party who furnishes both work and materials provides that certain installments of the price are to be paid to the builder as the work progresses, but the balance is not to be paid

until the vessel is finally completed according to specifications and delivered to, and accepted by, the other party, the title to the unfinished vessel is in the builder, unless it appears from the contract that the intention of the parties was different.

The general rule is that under a contract for making a chattel by one who supplies the labor and materials, no property passes to the buyer till the chattel is completed and delivered, or ready for delivery.

When according to the true construction of a contract for building a vessel to be paid for in installments as the work progressed, the title remained in the builder until completion and acceptance, it makes no difference that in the contract the company for which the vessel was built is designated as the owner. And consequently a lien claim is valid which describes the builder as the owner.

A lien claim for equipping a vessel with an electric lighting plant as originally filed designated a shipbuilding company as the contractors and the W. Co. as its owner. After the institution of a suit in equity to enforce the lien, the Court authorized the claimant to amend the lien and the bill of complaint by describing the Shipbuilding Co. as the owner of the vessel and the W. Co. as "now the owner." *Held*, that the Court had the power to allow this amendment under Code, Art. 63, sec. 41, which authorizes the making of amendments at any time in such proceedings commencing with the claim and extending to all subsequent proceedings. In this case none of the parties defendant were prejudiced by the allowance of the amendment.

When in a proceeding to enforce a mechanics' lien the Court authorizes an amendment of the claim which is accordingly done, the neglect of the claimant to file also an amended lien claim in the office of the Clerk of the Court where the original claim was filed is not a bar to the enforcement of the amended claim against parties to the suit in which the leave to amend was granted.

Code, Art. 63, sec. 46, provides that a mechanics' lien for work or materials on a boat or vessel shall continue for two years from the day on which the lien claim is filed and no longer. *Held*, that when a suit to enforce such a lien has been begun within two years after filing the claim, the proceedings may be continued and a decree passed after the expiration of two years.

*Decided February 28th, 1907.*

Appeal from Circuit Court No. 2, of Baltimore City (WICKES, J.)

. The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*Alexander Preston* (with whom was *Carter Lee Bowie* on the brief), for the appellant.

The amendments made were as follows: In the original claim as filed in the Superior Court of Baltimore City the title heading was *J. C. M. Lucas, etc.,* v. *The Steamer "Anne Arundel," The Baltimore Shipbuilding and Dry Dock Company, "builders;" Weems Steamboat Company, "owner;"* this title heading was amended by adding the words "and owners" after The Baltimore Shipbuilding and Dry Dock Company, so as to read "builders and owners," and the word "now" before the word "owner" after "Weems Steamboat Company," so as to read "Weems Steamboat Company, now owner." And also striking out the words "the agents and contractors for said steamer," and substituting the words "builders and owner" in the body of the lien, after The Baltimore Shipbuilding and Dry Dock Company. The right to make such amendment is clearly given by Art. 63, sec. 41 of the Code, which provides that any and all amendments may be made commencing with the lien claim itself, provided the amount is not enlarged, and this lien having been filed under the provisions of said article. *Real Estate Co.* v. *Phillips,* 90 Md. 515.

The Baltimore Shipbuilding and Dry Dock Company was the owner of the vessel until delivery, and the only interest the Weems Steamboat Company could have in her would be equitable at the most. A vessel is personal property and is transferred by delivery, and the evidence of a transfer by sale is by delivery and register in the office of the Collector of the Port, of the bill of sale. While the appellees offer absolutely no evidence as to ownership in this vessel vested in the Weems Steamboat Company prior to her delivery in July, 1904, they claim that the ownership vested in them by virtue of the building contract. An examination of this document will show that there is nothing to sustain such a contention ; from the beginning to the end of the contract there is not a word to warrant such a claim. The nearest approach to such a suggestion is that certain sums of money were to be paid as the work progressed, and at the end of the specifications reference

is made to a provision that no extras are to be charged without the owner's consent, and that the owner's inspector may have access, etc. See 2 *Parsons on Contracts* (9 ed.) 385, 386; *Clarkson* v. *Stevens*, 106 U. S. 505.

The appellants did file and record their lien claim within six months from the commencement of their work in equipping the "Anne Arundel" with electric lights and bells. The appellees' contention that the lien must be filed within six months from the time of commencing the building of the vessel, is contrary to the exact wording of the statute; it does not provide only that a lien is given from the commencement of the *building*, but from the commencement of the *equipping* of the vessel. This equipping commenced on April 19th 1904, and the lien was filed on October 11th, 1904, which is less than six months from the date on which the work began.

*Archibald H. Taylor* and *Edward Duffy* (with whom was *Geo. Weems Williams* on the brief), for the appellees.

This claim was not filed within six months from the *commencement* of the building. The mere fact that in some instances this might be impossible, does not authorize the Court to set aside the statute or refine it away. It is admitted that the present boat lien law passed over forty years ago may not give relief in the building of large modern steamers, but, however this may be, this steamer was finished in six months, and the appellants could have filed their lien within the statutory period.

It is claimed, however, that the work done by the appellants was "equipment" and the lien was filed within six months from the beginning of the equipment, which could not have been begun before April 19th, the date of the contract. How can the Court say whether it is equipment or not? There is no evidence to show the nature of the work, at what stage of the building it was put in place, whether it was in the nature of fixtures or movables, such as tackle, life preservers, furniture, etc., which latter would be equipment. One not versed in boat building, from a reading of the contract, would say

that the plant furnished by the appellants was in the nature of fixtures, and a part of the work necessary for the completion of the building of every modern passenger steamer, especially as the evidence shows that it was to be performed by a boat building company, under a building contract, and was so performed by such company through the appellants.

The lien claim does not set forth the place where the boat was built and has never been amended to set it forth. The lien claim is intended to give notice to would-be purchasers of a boat, and the statute has, therefore, wisely provided that the claim shall set forth the name of the owner, the name of the boat and the name of the place where built, for purposes of identification. It is, therefore, submitted that this claim is defective, because not filed in time and because it does not set forth the place where the steamer was built and is, therefore, not a valid claim.

It has been stated that the appellants were allowed to amend and the question, therefore, arises whether this was proper. There is no doubt that both lien claims and bills in equity to enforce them can be amended, but it must be borne in mind that the bill in this case was not amended to meet testimony contrary to its allegations, but was amended when both the answers of the defendants and the proof showed that the allegations of the bill were correct. The answers and the proof showed that at the time the work was done the Dry Dock Company was the builder and the Steamboat Company the owner of the boat. Now, how can the appellants be allowed to amend their bill so as to set up that at the time the work was done the Dry Dock Company was the owner?

The appellants filed with their bill not the original lien claim as recorded, but a certified copy of the same, and it was this certified copy that they were allowed to amend, while the lien claim duly sworn to under the statute and recorded in the Record Office, necessarily remains unchanged. This can hardly be proper practice.

We would suggest that the proper practice is for the lienor to file an amended claim in the Record Office, and then insti-

tute his suit in equity on the amended claim, or if such suit has already been instituted, file an amended bill on the amended claim, and then the question comes up before the lower Court as to whether or not under the statute the amendment was proper. The lower Court has nothing to do with the amendment of a lien claim. Under the statute a party can file and record a lien claim and thereafter can file and record as many amendments thereof as he sees fit. The only question for the lower Court is whether or not such amendments after they are made were authorized by the statute.

The bill alleges in the third paragraph that at the time the lien was filed the Steamboat Company was the owner of the boat, and that it afterwards sold the boat to the defendant railway company, together with all of its property, so that if the appellants are granted a decree for the sale of this boat, the Court will be selling the boat of neither the Dry Dock Company nor the Steamboat Company, but the boat of a *bona fide* purchaser, for value, towit, the Railway Company.

Now at the time the Railway Company purchased this boa- the only notice that it had of any liens against it is the met chanics' lien claim now filed in the Record Office, and alleging that the appellants claim a lien on the steamer "Anne Arundel," which was built by the Dry Dock Company and owned by the Steamboat Company, which lien was defective, because not filed within six months, not stating the place where the boat was built, and because it was filed by a sub-contractor, and, because of such defects was not notice to the Railway Company. Certainly the statute authorizing amendments of mechanics' liens does not authorize the amendment of such a lien so as to make it valid against the boat in the hands of a *bona fide* purchaser. *Real Estate Company* v. *Phillips*, 90 Md. 515.

It is not disputed that the term "owners," repeatedly used in the contract, refers exclusively to the second party to the contract, the Weems Steamboat Company. The owners' inspector is, of course, the inspector of the Weems Steamboat

Company, to guard against omissions and deficiencies on the part of the builder, and the clause against allowing extras, except on written agreement with the owners,. is, of course, a clause for the protection of the Steamboat Company for whom the ship was to be built.    These express declarations of the Steamboat Company, as owner, as well as the recognition of the Steamboat Company.as such, is borne out consistently and substantially all through the contract, even where the expression is not used, and is regarded, as we shall see hereafter, in accordance with the authorities conclusive of the rights of the parties to this cause.    As these authorities say, it is the intent of the contract between the parties which settles the question of ownership.

While this contract was signed on the 13th of January, 1904, as aforesaid, its terms had already been agreed upon and the keel of the steamboat had actually been laid in accordance with the terms of this contract January 2nd, 1904, so that under the terms of the contract, at the date it was signed, no less than $16,000 was already put in the hands of the builder, with which to carry on his contract at the moment when nothing but the keel was laid, and at every stage in the building and construction of the boat, he was supplied with the money with which to defray the estimated cost of construction, leaving nothing to be paid after the boat was completed and in the possession of its owner, except what may be fairly calculated to be the builder's percentage of profits for his services.

We have seen that in the contract made by the plaintiffs, appellants here, the appellants did not consider the Baltimore Shipbuilding and Dry Dock Company as the owner, but that the Weems Steamboat Company was the owner, for they speak of the boat as "the boat you are building for the Weems Line Company."    If this description and the language of that contract elsewhere leaves room for any doubt, it is all removed by the circumstances above mentioned, that in the lien claim, as originally filed, in the Superior Court of Baltimore City, and as in the bill of complaint, as originally filed in the Court below, the plaintiffs, or appellees, expressly charge that the

Weems Steamboat Company was the owner of the boat, and the Baltimore Shipbuilding and Dry Dock Company, the builder or agent for the owner. This shows conclusively what the plaintiffs understood and believed to be the relative attitude of the two parties when the supplies were furnished. This is all important in this case in a Court of equity, because the cases, which hold, that the builder is the owner of the boat, until it is delivered to the party upon whose order it is constructed, support this view upon the equity, that arises from the fact, that the builder or contractor being in possession of the boat while under construction, is thus held out to material and supply men as owner, and hence, must be so regarded and declared to be in law.  But in a case like this, where it is plain that the material man was informed that the builder was merely building the boat for the Weems Steamboat Company, and the references made to their having supplied the steamer "Potomac," which is referred to as the model, in the contract between the Shipbuilding Company and the Weems Steamboat Company, it becomes plain, that the plaintiffs knew not only that the boat was not being built by the builder upon its own account, but that it was being built for the Weems Steamboat Line under the very contract between the builder and Steamboat Company shown in evidence, under which contract all the money was being supplied to the builder as the construction progressed.  It would seem, therefore, as if the plaintiffs were equitably estopped from alleging the builder company to be the owner of the boat, when it becomes plain that they treated with it as the mere contractor, and furnished the material upon a clear understanding of the actual relationship between the builder and the Weems Steamboat Company, who by the express terms of their contract, are made and declared to be owners.

Under the terms and circumstances of the building contract, here proven, the Weems Steamboat Compay is clearly the owner of the boat, and was so from the beginning of its construction.

The English cases hold consistently, that it is a question to

be determined from the building contract, and its circumstances, whether the property, the general property in the boat in process of construction, is intended to pass to the purchaser, or person on whose order she is being built.    Of these circumstances the payment of the price in installments ; the superintendence or inspection by the purchaser, are potent, as indicating that the title is intended to be in the purchaser or person ordering the boat and furnishing the money.    But any circumstsnces indicating appropriation by such purchaser will suffice:    *Woods* v. *Russell*, 5 Barn. & Ald. 942 ; *Clarke* v. *Spence*, 4 Ad. & E. 448 ; *Wood v. Bell*, 5 El. & Bl. 772 ; affirmed in Exchq. Ch., 6 El. & Bl. 355 ; *Laidler* v. *Burlinson*, 2 Mees. & W. 614 ; *McBain* v. *Wallace*, L. R. 6 App. cases, 589 ; *Seath* v. *Moore*, 11 App. cases, 370.

Benjamin on Sales says, that while the English cases have been criticised and declared questionable in America, the American cases show that there is no substantial difference with regard to the law on this subject in the two counties, and quotes C. J., BIGELOW, one of the critics, who says, in *Briggs* v. *Lifeboat*, 89 Mass. 287 : " That it is a question of intent arising on the interpretation of the entire contract in each case."

In America, in the various States, the decisions have been conflicting.    In Maine and Pennsylvania the builder has been clearly decided not to be the owner of the boat, and liens to third parties, under statutes which secured them upon the debts of the owner, have not been allowed to be held :    See *Mosely* v. *Brown*, 34 Me. 107; *Butterworth* v. *McKinley*, 11 Humphries, 209; *Sanford* v. *Diggins Ferry Co.*, 27 Ind., 522.

In Maryland there seems to be no decision on the subject. But the doctrine seems to have been summed up by the Supreme Court of the United States in two cases, which have been from time to time referred to and quoted with approval, and which we believe now contain the true statement of the law on this subject : *Calais Steamboat Co.* v. *Scudder*, 67 U. S. 282 ( L. Ed.) 2 Black, 372 ; *Clarkson* v. *Stevens*, 106 U. S. 505.

It is all important to take notice, in applying the rules above, and especially the reason given why the payment for the boat in installments as the work progressed did not have the effect of vesting the property in the purchaser or party for whom built, that in this case here the contract did not allow of the Weems Steamboat Company rejecting the boat and recovering its purchase money for either a partial or total failure, but that as a necessary effect of the contract, it was bound to continue to hold the boat as its own, and to reimburse itselt for any defects or shortcoming in her construction, by resorting to the security of a bond, the amount of which, was about one-half of the consideration paid for the boat, showing conclusively, that it was intended, that the Weems Steamboat Company should always have the boat, for what it was worth.

There is no provision made in the contract by which the Weems Steamboat Company could refuse to accept the boat, as not being up to the requirements of the contract, and recover its money. It is simply a straight contract, by which the Shipbuilding Company is employed as any single individual might be employed, to construct the boat under the superintendence of the owner, who is to furnish the money, practically always in advance, as the building progresses, and the boat is to be delivered at a certain date, without condition. The boat was completed and delivered on time, without penalty upon the contractor. But if she had not been delivered on time, but had been delivered later, so that the Steamboat Company might have lost the season it was calculating on, or if, when delivered, she did not conform to the specifications of the contract, and was a failure by reason of the default of the builder, the only remedy under the contract that the owner had, was to sue the contractor upon a bond, the penalty of which was only one-half of the price of the boat and which could not, therefore, admit of his rejecting the boat and suing upon the bond without losing whatever value there was in the boat.

Moreover, it would be monstrous to say, that under the terms of the contract this builder, being the owner of the boat,

could have sold it, and then have offered to give the con-
tractor another boat, in its place or in its own good time, and
that the contractor would have had any remedy upon his con-
tract which remitted him to his bond alone, if he so acted,
and yet this would be the case if the contractor owned the
boat, that he could so act, and many of the cases upon this
point apply that as the test to determine the intent of the con-
tract.

In a word, if, as all the cases say, as our Supreme Court
has said distinctly in the leading case just quoted, that the
question of intent is open in every case to be determined upon
the terms of the contract, what form of contract could be de-
vised, that would more explicitly make the owner, than
is done by the terms of the contract in this case? It does
not leave it to any inference that the Weems Steamboat Com-
pany is the owner, from all these circumstances, which the
Courts have declared in these cases do prove it to be so, more or
less inconclusively or conclusively, but it says with distinct-
ness, again and again, that the Weems Steamboat Company is
the owner, not is to be, but is the owner during the time the
ship is being *"furnished"* during the time she is being "de-
signed" as the "material and work is furnished," and is to be
always under the eyes of the owner's inspector who shall at
all times have access to the same. In a word, the contract
says expressly, that the Weems Steamboat Company is the
owner of this vessel, from the time she is designed, and its,
the owner's inspector, is to be practically always in possession
of the ship as she is being built.

Our Code itself clearly distinguishes between the builder of
the boat and the owner, and shows that they are to be re-
garded as different persons from the point of view of this sec-
tion. The Code gave no lien to a sub-contractor, but only
for the debts of the owner. It does not pretend to secure a
debt of the builder and contractor, or any other person, ex-
cept the owner, as in the case of the lien law for buildings,
which has a clause, section 11, which provides for this. Of
course the debt of the owner, if contracted for him by an agent

thereto authorized to contract, would be the debt of the owner, and that is contemplated in section 44. But in this case, it is plain that the contract does not authorize the builder or contractor to contract any debt for the owner, but expressly forbids it. What we do mean to point out is, that in section 43, the boat builder is clearly differentiated from the owner, and, consequently, to attempt to make this section designate the boat builder and contractor as the owner, is not only contrary to the terms of the contract, but contrary to the terms of the statute. Both of them taken together, exclude the idea that the boat builder is to be regarded as the owner, so that it would seem as if the two together plainly exclude the cases which so regard him, from the application of the Act and this contract.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from a decree of Circuit Court No. 2 of Baltimore City dismissing a bill filed by the appellants for the enforcement of a boat lien. The lien was claimed against the Steamer Anne Arundel, which was built at Baltimore City by the Baltimore Shipbuilding and Dry Dock Company under a contract with the Weems Steamboat Company The lien claim was for a balance of $1,764.13 for work done and materials furnished in equipping the steamer with an electric light plant at the instance of the Shipbuilding Company.

It appears from the record that the keel of the steamer was laid on or about January 2nd, 1904, and the completed vessel was delivered on July 1st, 1904, to the Weems Steamboat Company, which paid in full the contract price for its construction. The formal contract for building the steamer was not actually executed until eleven days after the construction had been commenced, but the terms of the contract had been agreed upon. The contract for installing the electric light plant on the steamer was made between the appellants and the Shipbuilding Company on April 19th, 1904, and the work called for by the contract was completed by July 1st, 1904. A few changes or alterations were made, in some of the wires,

between July 1st and 11th, after the steamer had passed into
the hands of the Weems Steamboat Company and the charges
for those alterations form part of the lien claim.

The claim was filed in the office of the Clerk of the Superior
Court on October 11th, 1904, which was within six months
from the commencement of the work for which the lien is
claimed, but not within that time from the laying of the keel
of the steamer. The claim is in the usual form and states
that the work was done and the material furnished by the
appellants "at the instance and request of the said Baltimore
Shipbuilding and Dry Dock Company in said Baltimore City."
In the claim as originally filed the Shipbuilding Company
were described as "agents and contractors" for the steamer
and the Weems Steamboat Company as its owner but by the
amendment hereinafter mentioned the former company was
described as its owner and builder and the latter company as
being "now the owner."

After the steamer had been completed and delivered to the
Weems Steamboat Company the Shipbuiding Company failed
and its affairs were by a deree of the Circuit Court of Balti-
more City placed in the hands of Archibald H. Taylor and
Walter Ancker as receivers, and the Weems Company sold
the steamer to the Maryland, Delaware and Virginia Railway
Company.

In that situation of affairs the present bill for the enforce-
ment of the lien was filed on February 24th, 1905. The bill
alleges the facts which we have mentioned and prays for a
sale of the steamer for the satisfaction of the lien. A certified
copy of the lien claim was filed with the bill as an exhibit.
All of the defendants answered the bill. The receivers of the
Shipbuilding Co. and the Weems Steamboat Co. in their
answers deny the validity of the lien, but the Railway Co.
states that it has no knowledge of the facts set forth in the
bill and neither admits nor denies them but demands proof of
them. The Railway Co. further states in its answer that it
has purchased the steamer Anne Arundel with all the other
property of the Weems Steamboat Co. but does not aver that

it has paid for the same nor set up the defense of being a *bona fide* purchaser for value without notice of the lien.

The plaintiffs took testimony proving their contract with the Shipbuilding Co. for the installation of the electric lighting plant on the steamer, the performance by them of the contract on their part, that the balance claimed of $1,764.13 of the contract price remained unpaid, and that on September 26th, 1904, they gave written notice to the Weems Steamboat Co. of their intention to claim a lien therefor. The defendants put in evidence the contract for building the steamer between the Shipbuilding Co. and the Weems Steamboat Co. It was admitted that the Weems Steamboat Co. paid to the Shipbuilding Co. the full contract price for the construction of the steamer.

The learned Judge below filed no opinion in the case and we are therefore not informed as to the ground on which he relied in dismissing the bill.

The reasons asserted in argument by the appellees for denying the validity of the lien claim were substantially as follows: That the appellants were sub-contractors to whom the Code does not give a lien on boats, That the lien claim was not filed within six months from the commencement of the building of the steamer, That the claim does not state at what place the boat was built, That the Weems Steamboat Co. and not the Shipbuilding Co. was the owner of the steamer, That there was no proper amendment of the lien claim and that the lien, if it ever was valid, had expired by limitation at the date of the decree.

The provisions of the Code in reference to liens on boats and vessels are found in Art. 63 relating to Mechanics Liens.

Sec. 43 provides that all boats or vessels of any kind whatsoever used or intended to be used on the Chesapeake Bay or other waters of this State or belonging in this State shall be subject to a lien and bound for the payment thereof as preferred debts for all debts due to boat builders, mechanics, &c., from the owners, masters, captains or other agents of such boats or vessels for materials furnished or work done in the building, repairing or equipping the same.

Sec. 44 requires the lien claim to be filed in the office, in Baltimore City, of the Clerk of the Superior Court "within six months from the commencement of the building, repairing, equipping or refitting of the boat or vessel," and provides that the claim shall state, along with other things, the place where the boat was built, repaired, equipped or refitted.

Sec. 46 provides that the lien on the boat or vessel shall continue for two years from the day on which the lien claim is filed and no longer.

Sec. 41 provides that Article 63 "shall be construed and have the same effect as laws which give general jurisdiction or are remedial in their nature; and such amendments shall from time to time and at any time be made in the proceedings, commencing with the claim or lien to be filed and extending to all subsequent proceedings as may be necessary and proper; provided that the amount of the claim or lien filed shall not in any case be enlarged."

Considering the objections urged by the appellees against the validity of the lien claimed in this case in the order in which we have stated them; we observe that the question of the right of a sub-contractor to a lien has been eliminated from the case by the amendment of the proceedings so as to treat the Shipbuilding Co., for whom the work was done, as the owner of the vessel.

We think that the filing of the lien claim on October 11th, 1904, for the balance due for the installation of the electric light equipment which was begun on or after April 19th, 1904, was a compliance with the requirement of sec. 44 that the lien claim must be filed "within six months from the commencement of the building, repairing, equipping or refitting" of the boat or vessel. If we were to adopt the contention of the appellees that all boat liens against a newly constructed vessel must be filed within six months from the commencement of its building we would not only ignore the language of the statute but would, whenever more than six months were consumed in building a vessel, deny the benefit of any lien at all to such mechanics and others as furnished labor or material to the

vessel for that portion of its building which was done after the expiration of six months from the laying of its keel. We also think that the lien claim, in stating that the work was done and the materials were furnished "at the instance and request of said Baltimore Shipbuilding and Dry Dock Company in said Baltimore City," sufficiently complied with the requirement of sec. 44 as to the statement of "the place where" the boat was built, repaired, equipped or refitted.

Upon a proper construction of the contract between the Shipbuilding Co. and the Weems Steamboat Co. for the building of the Anne Arundel the former and not the latter company must be regarded as having been the owner of the steamer while it was being built. The essential features of that contract, which is too long for insertion here, are as follows: The Shipbuilding Co. agrees to construct and fully complete on or before the first day of July, 1904, for the Weems Steamboat Co. a steamer to be a substantial duplicate of the steamer Potomac then owned by the latter company. "The price for said steamer *so constructed and ready for delivery within the time aforesaid*" is fixed at $91,560, to be paid in installments as set forth in the contract. The last two installments are stated to be: Eleven thousand ($11,000) *upon completion of satisfactory trial trip;* nine thousand five hundred and sixty dollars ($9,560) *within thirty (30) days after delivery in accordance with the terms of this contract and accompanying specifications and the establishment of the fact that the speed and carrying capacity are equal to those of the 'Potomac.'*" A memorandum attached to the contract and signed by the parties provides among other things, that the material and workmanship of the vessel to be constructed are to be first class and to be satisfactory to the owners inspector, who shall at all times have access to the same. In this supplemental memorandum the Weems Steamboat Co. are described as "the owners." The builder was required by the contract to give a bond for $50,000 for its performance.

There is some conflict of authority as to who is to be regarded as the owner of a vessel being built under a contract

to furnish both work and materials, before her completion and delivery to and acceptance by the party for whom she was to be built. Treating the vessel merely as a chattel its title during its manufacture would remain in its manufacturer until its completion and would then pass by delivery to and acceptance by the party for whom it was made. But in contracts of this class like others the true method of interpretation to be followed is to ascertain from the terms and circumstances of the contract what was the intention of the parties in making it.

The English Courts while upholding this rule have shown a tendency to regard the fact that the contract price for building a ship was to be paid to the builder in installments as the work progressed as furnishing strong evidence that the title to so much of the ship as was paid for by each installment was to vest in the vendee at the time of the payment. *Woods* v. *Russell*, 5 Barn. & Ald. 942; *Clarke* v. *Spence*, 4 Ad. & El. 448; *Wood* v. *Bell*, 5 El. & Bl. 772; *Laidler* v. *Burlinson*, 2 Mees. & Wel. 614; *McBain* v. *Wallace*, L. R. 6 App. cases, 589. Lord Campbell in *Wood* v. *Bell*, *supra*, referring to *Woods* v. *Russell* and *Laidler* v. *Burlinson*, *supra*, and other earlier cases said "still it must be remembered after all that what we have to determine is a question of fact; namely what upon a consideration of all of the circumstances we believe to have been the contract into which the parties have entered."

No Maryland decision construing a shipbuilding contract of this character has been brought to our notice nor are we aware of the existence of any.

In *Clarkson* v. *Stevens*, 106 U. S. 505, the Supreme Court of the United States had occasion to pass upon and construe a shipbuilding contract containing many of the features of the one now before us, in order to determine whether the title to the vessel while unfinished remained in the builder or passed to the party for whom it was being constructed. Under the contract in that case Stevens was to build for the United States Government a harbor defense vessel of a specified character by a certain date. The government was to have an inspector to be admitted at all times to Stevens' shipyard who

should receive, receipt for and mark with the letters "U. S.' all materials for the construction of the vessel and certify the accounts presented therefor. The government was to pay a gross price of $586,717.84 for the vessel, when fully completed and delivered at the Navy Yard at Brooklyn in conformity with the contract, but payments to the extent of not exceeding $500,000, were to be made on account as the work progressed upon bills certified by Stevens and the government inspector, and the balance was to be paid when the vessel, fully completed according to the contract, was delivered to the government and accepted by it. In lieu of other security for the faithful performance of his contract Stevens gave to the government a mortgage upon his shipbuilding establishment. The Supreme Court held that the title to the unfinished vessel remained in Stevens until its completion and delivery to and acceptance by the government. In arriving at its conclusion the Court reviewed the English doctrine as announced in the cases which we have cited and referred to the rule as laid down by LORD CAMPBELL in *Wood* v. *Bell,* 5 El. & Bl. 772, and adopted by the Courts of Massachusetts in *Williams* v. *Jackman,* 16 Gray, 514, and of New York in *Andrews* v. *Durant,* 11 N. Y. 35, and of New Jersey in *Elliott* v. *Edwards,* 35 N. ·J. L. 265, that "Under a contract for supplying labor and materials and making a chattel, no property passes to the vendee till the chattel is completed and delivered or ready for delivery. This is a general rule of law. It must prevail in all cases unless a contrary intent is expressed or clearly implied from the terms of the contract." After alluding to the fact that for a time the English Courts following a dictum in *Woods* v. *Russell,* 5 Barn. & Ald. 942, held that a provision in such a contract for a payment of the price in installments furnished strong evidence that the title to so much of the vessel as was from time to time paid for vested in the vendee, the Supreme Court further say "The Courts of this country have not adopted any arbitrary rule of construction as controlling such agreements but consider the question of intent open in every case to be determined upon the terms of the contract and the circum-

stances attending the transaction." In that case it was held that the title to the vessel remained in Stevens until its completion and that upon his death pending its construction it passed to the residuary devisee under his will, the Court saying "we are of opinion that the fact that advances were made out of the purchase-money according to the contract for the cost of the work as it progressed, and that the government was authorized to require the presence of an agent to join in certifying the accounts are not conclusive evidence of an intent that the property in the ship should vest in the United States prior to final delivery." In reaching its conclusion the Court laid stress upon the fact that under the terms of the contract the question of its proper performance was in effect reserved for determination until after the completion of the vessel as a condition of acceptance and final payment.

Applying the rule of construction thus laid down by the Supreme Court of the United States, which we are prepared to adopt, to the contract in the record before us it results that the steamer Anne Arundel was owned by the Shipbuilding Company at the time when the work, for which the appellants claim a lien, was done on her. Although the contract under which she was built provided for the payment of the purchase-money in installments as the work progressed and the Weems Steamboat Co. was entitled to have an inspector present in the yard of the builder, the determination of the question whether she had been constructed according to the contract was reserved until her completion and her conformity to the contract in design, material and work was plainly made a condition of her acceptance and the payment of the last two installments of the contract price. Under these circumstances we regard as immaterial the mere fact that in the supplemental memorandum appended to the contract the Weems Steamboat Co. is several times designated the "owner."

Having determined that the Shipbuilding Company was to be regarded as the owner of the vessel during its construction the next question to be considered is whether the record shows a sufficient and effective amendment of the proceedings

to entitle the appellants to a decree in this case for the enforcement of their lien claim. This question is not one of the Circuit Court's discretion in permitting the amendment, but one of its power to do so. The powers of the Court in dealing with a proceeding like the present one are wider and greater than those incident to the limited jurisdiction ordinarily exercisable by it in statutory proceedings. Sec. 41 of Art. 63 declares in positive and unmistakable language that " This article shall be construed and have the same effect as laws which give general jurisdiction or are remedial in their nature " and authorizes the making of proper amendments at any time in the proceedings " commencing with the claim or lien to be filed and extending to all subsequent proceedings." As was said in *Real Estate Company* v. *Phillips*, 90 Md. 525, " It is difficult to imagine any more extensive power of amendment than that conferred by the section just quoted." In that case the mechanic lien claim alleged that the materials for which the lien was claimed had been furnished to A. the contractor and that B. was the reputed owner of the property. No notice had been given to the owner of the intention to claim the lien. A bill was filed in equity for the enforcement of the lien and in taking the testimony in the case it was shown that A. and C. were both builders and equitable owners, whereupon, after the time within which a lien could be filed, the plaintiffs were allowed to amend their claim, so as to allege that A. and C. were both builders and equitable owners of the property, and a decree was rendered in the plaintiffs favor. Upon an appeal to this Court the decree was affirmed. It was urgently contended in that case that to permit the amendment there made was in effect to allow an entirely new claim of lien to be filed after the expiration of the time prescribed for filing the original lien, but as both parties to the building contract knew their mutual relations and the interest of no *bona fide* purchaser without notice was affected, this Court held that the lower Court had not exceeded its power in permitting the amendment and passing a decree in the plaintiff's favor.

In the present case the Shipbuilding Co. and the Weems

Steamboat Co. were perfectly familiar with the terms of the contract between them under which the steamer was built and neither of them were prejudiced by the allowance of the amendment. The Railway Company the other defendant which purchased the completed steamer from the Weems Company does not aver, in its answer to either the original or amended bills, that it purchased and paid for the boat without notice of the lien nor does it in any manner set up or rely upon the defense of having been a *bona fide* purchaser for value and without notice of the lien. We therefore think the Court below did not exceed its power in allowing the amendment.

Nor do we think that there was any such technical mistake in the manner of making the amendment as should have caused the appellants the loss of their claim to which there was no defense interposed on the merits. The appellants as plaintiffs below having obtained leave of the Court, after the evidence was in, to amend the lien claim and bill of complaint in the respect already mentioned proceeded to amend accordingly the bill of complaint and the certified copy of the lien claim which had been filed with the bill as an exhibit, without filing an amended lien claim in the Clerk's office of the Superior Court. The appellees did not demur to the amended bill or by any form of pleading object to the manner in which the amendment had been made, but formally adopted by a paper filed by them in the case, as their answers to the amended bill, the ones which they had respectively filed to the original bill.

It is doubtless an excellent practice in amending a lien, even when done by leave of Court in a pending suit, to also file the amended claim in the clerk's office where the original lien is required by law to be filed and a failure to take that precaution may debar the claimant from enforcing his claim against the property in the hands of a *bona fide* purchaser for value without notice of the amendment. It may also be said that the Code requires inferentially, although not in express terms, that an amendment to a mechanics or boat lien, voluntarily made by a lienor in the exercise of his statutory right,

must be filed in the clerk's office where the original lien was filed. But it does not therefore follow that every amendment of the lien claim which may be authorized, during the progress of a proceeding for its enforcement, by a Court of equity, in exercise of the general jurisdiction conferred upon it by Art. 63 of the Code, must be filed in the clerk's office where the original lien is recorded in order to be effective for the purposes of that suit. This is especially true when it is not sought by the amendment to affect the rights of other persons than those who are before the Court as parties to the suit in which the leave to amend is granted, and thereby receive notice of the amendment. We see no sufficient reason for holding the amendment now under consideration to have been ineffective as against the interest of the appellees or any of them in the steamer on which the lien is claimed.

Nor do we think that for the purposes of this suit the lien given by the statute to the appellants has expired because more than two years have now elapsed since the filing of their lien claim. We cannot yield our consent to the appellee's contention that the lien expires at the expiration of the two years mentioned in section 46 of Art. 63, even although the proceedings contemplated by the statute for its enforcement have been instituted within two years and are still pending. To adopt so strict an interpretation of the lien law would not only disregard the provision of sec. 41 as to the method of construing Art. 63, but would frustrate the beneficent purposes of its enactment. Under the appellee's view of the law all that would be necessary to defeat the lien which it gives to a mechanic upon a boat for work done in building it would be to prolong the defense to the proceeding for its enforcement, even if promptly instituted, by obstructive tactics or the exercise of the right of appeal, for two years from the date of the filing of the lien claims. Or unavoidable delays for that length of time arising from crowded dockets or the illness of a Judge, or other causes over which the lien claimant, however diligent, had no control would deprive him of all benefit from his lien.

The primary purpose of the lien law was to give to certain classes of claims regarded by the law as meritorious the *security* of a lien upon the structures created by the labor or material forming the basis of the claim. The law does not require the party entitled to the lien to enforce it at once. The views of this Court upon that subject were expressed in the case of *Blocher* v. *Worthington*, 10 Md. 1, which in many respects resemble the one now before us. In Blocher's case, in construing sec. 15 of the mechanics' lien law in Allegany County enacted by ch. 76 of the Acts of 1841, which provided that "the lien of every such debt, for which a claim shall have been filed as aforesaid, shall expire at the end of three years from the day on which such claim shall have been filed unless the same shall have been revived by *scire facias*," &c., the Court said: "The defendant contends that this section interposes an absolute bar to all further proceedings upon the claim after the expiration of three years. We think that the plain meaning of this section is that the *scire facias* must issue before the expiration of the three years from the filing of the claim. Filing the claim creates the lien upon the property but the party need not proceed immediately to enforce it by process."

In several case, which were instituted to enforce mechanics' liens, within five years after the filing of the lien claim this Court has by its decrees, passed after the expiration oft he five years, enforced the lien or at least recognized its existence. In *Real Estate Co.* v. *Phillips*, 95 Md. 515, the lien claim was filed on January 26th, 1891, and the bill for its enforcement was filed on January 5th, 1892, but the decree establishing the lien and directing its enforcement was not passed until August 18th, 1899, and that decree was affirmed by this Court as late as January 11th, 1900. In *Baker* v. *Winter*, 15 Md. 1, which was a *scire facias* to enforce a mechanics' lien our predecessors by a decision rendered after the expiration of five years from the filing of the claim, reversed the judgment and sent the case back to permit the lien to be amended in the lower Court and further proceedings had for its enforcement; and in *Greenway* v. *Turner*, 4 Md. 296, this Court by its judg-

ment rendered more than five years after the filing of the lien claim reversed the judgment of the lower Court in a *scire facias* to enforce a mechanics' lien and sent the case. back for further proceedings. In both of these cases the *scire facias* was instituted before the expiration of the five years.

It thus appears that this Court has heretofore acted in accordance with that construction of the lien law which holds that the lien may be enforced by an appropriate suit in equity or *scire facias* provided the proceeding be instituted within the five years mentioned in the statute even though the final judgment or decree therein be rendered after the expiration of that period.

The appellees have called our attention to some decisions of a tenor opposite to the views which we have expressed, touching the expiration of mechanics' and judgment liens, but none of the decisions relating specifically to mechanics' lien are of Courts of last resort. Nor is the reasoning in any of these cases sufficiently cogent to induce us to depart from the course pursued by our predecessors in the application of the mechanics' law of this State.

For the reasons set forth in this opinion the decree appealed from will be reversed and the case remanded for further proceedings in accordance with this opinion.

> *Decree reversed with costs and case re-*
> *manded for further proceedings in*
> *accordance with this opinion.*